IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

SUSAN WILD,

        Plaintiff,

v.                                                               CIVIL ACTION NO. 4:13cv70

BARBARA GASKINS,

        Defendant.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed by Defendant Barbara Gaskins ("Defendant"). The Court finds that oral argument of this Motion will not aid its decisional process. Having carefully considered the parties' pleadings, this matter is now ripe for disposition. For the reasons set forth herein, the Motion to Dismiss is **GRANTED** and Plaintiff is **GRANTED** leave to file an amended complaint.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 28, 2013, Plaintiff Susan Wild ("Plaintiff") filed a complaint against Defendant alleging tortious injury. Defendant responded by filing a Rule 12(b)(1) Motion alleging this Court lacks subject-matter jurisdiction.

Plaintiff alleges that on or about July 8, 2010, Plaintiff was a passenger aboard Defendant's 19' Skeeter ZX ("the boat"). (Compl. ¶ 5). While on board the boat, Plaintiff alleges that she was under the authority of Defendant as the operator of the boat. (Compl. ¶ 8).

1

Plaintiff alleges that Defendant was negligent in her directions and operation of the boat, and that this negligence was the proximate cause of Plaintiff's slip and fall that resulted in Plaintiff fracturing her left leg. (Compl. ¶ 9-10).

## II. LEGAL STANDARDS

Courts may dismiss claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing subject-matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The defendant may challenge subject-matter jurisdiction by contending either (1) that the complaint fails to allege facts sufficient to establish subject-matter jurisdiction (a "facial challenge"); or (2) the jurisdictional allegations in the complaint are false (a "factual challenge"). *Lutfi v. United States*, No. 11-1966, 2013 U.S. App. LEXIS 8322, at *11-12 (4th Cir. Apr. 24, 2013) (citing *Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009).

A facial challenge requires the court to dismiss the complaint only if the alleged facts, if taken as true, fail to establish subject matter jurisdiction. *Id.* at *12; *see also Bain*, 697 F.2d at 1219. A factual challenge however, requires that the court "go beyond the allegations of the complaint" and weigh evidence to determine jurisdiction. *Id.* If jurisdictional facts and facts central to the merits are intertwined, the "the entire factual dispute is appropriately resolved only by proceeding on the merits." The Rule 12(b)(1) motion should only be granted where "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III. DISCUSSION

"A federal maritime claim may be asserted in federal district court either under § 1333,[1] or, in consequence of the 'saving to suitors' clause of that section, based on diversity of citizenship." *Pryor v. American President Lines*, 520 F.2d 974, 976 (4th Cir. 1975). When the defendant admits facts establishing diversity jurisdiction, as Defendant does in this case (Answer ¶ 1), the threshold question becomes whether maritime jurisdiction exists over the claim. *See Pryor* at 997 ((quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 204 (1971) (explaining that "under either section the claim . . . would be rooted in federal maritime law.")); *see also Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 367 n.23 (1959) (discussing maritime claims and jurisdiction).[2]

In order to establish federal maritime jurisdiction, a party must satisfy both the "location test" and the "connection test." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1994). To satisfy the location test, the court must determine whether (1) the injury occurred on navigable water; or (2) the injury was caused on land by a vessel on navigable water. *Id.* The connection test requires the court to (1) assess the general features of the incident to determine whether the incident has a potentially disruptive impact on maritime commerce; *and* (2) determine whether the general character of the activity that resulted in the incident has a substantial relationship to traditional maritime activities. *Id.* (citing *Sisson v. Ruby*, 497 U.S.

---

[1] Section 1331(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled . . . ." 28 U.S.C. § 1331(1).
[2] The United States Supreme Court in *Romero* held in part:
> All suits involving maritime claims, regardless of the remedy sought, are cases of admiralty and maritime jurisdiction within the meaning of Article III whether they are asserted in the federal courts or, under the saving clause, in the state courts. [Plaintiff]'s claims for damages under the general maritime law are a case of admiralty and maritime jurisdiction. The substantive law on which these claims are based derives from the third provision of Art. III, § 2, cl. 1. Without that constitutional grant [plaintiff] would have no federal claim to assert.

*Romero* at 367 n.23.

358, 363-65 (1990)) (emphasis added) (internal quotation marks omitted). The incident giving rise to the cause of action must be one which "pose[s] more than a fanciful risk to commercial shipping." *Grubart*, 513 U.S. at 539. Federal admiralty jurisdiction applies uniformly to commercial and pleasure vehicles. *See Alford v. Appalachian Power, Co.*, 951 F.2d 30, 32 (4th Cir. 1991) (explaining uniform treatment is required to provide certainty).

In Defendant's Memorandum in Support of Defendant's 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Defendant primarily contends that this Court lacks subject-matter jurisdiction because Plaintiff fails to satisfy the connection test. (Def.'s Mem. in Supp. 7). Defendant admits Plaintiff satisfies the location test as Kerr Reservoir[3] constitutes navigable water. (Answer ¶ 1). In Rebuttal Memorandum in Support of Defendant's 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Defendant further admits that the incident has a "substantial relationship to traditional maritime activities," satisfying one of the connection test's two prongs. (Def.'s Rebuttal Mem. in Supp. 2). Plaintiff however, fails to meet the first prong of the connection test.

The connection test articulated in *Grubart* requires this Court to "assess the general features of the type of incident involved to determine if the incident has a potentially disruptive impact on maritime commerce." 513 U.S. at 534 (internal quotation marks omitted). The assessment must be made at an "*intermediate* level of possible generality" and the potential disruptive impact of the incident on maritime commerce must be more than a "fanciful risk to commercial shipping." *Id.* at 538-39 (emphasis added). Cases giving rise to federal maritime

---

[3] The Court of Appeals for the Fourth Circuit determined the Kerr Reservoir to be a navigable body of water reasoning that "[a]lthough the Kerr Reservoir may not currently be used for commercial navigation, because it is capable of being used for purposes of transportation and commerce by customary modes of trade and travel on water, it is a navigable waterway for purposes of determining admiralty jurisdiction." *Price v. Price*, 929 F.2d 131, 135 (4th Cir. 1991).

4

jurisdiction must implicate the underlying federal interest in federal maritime jurisdiction – the protection of maritime commerce. *Sisson v. Ruby*, 497 U.S. 358, 364 n.2 (1990).

Plaintiff contends that the general features of this incident have a potentially disruptive impact on maritime commerce and thus, satisfy the connection test. (Pl.'s Mem. in Opp'n 6). Plaintiff characterizes her analysis of the connection test in *Foremost Ins. Co. v. Richardson* as "whether an accident *of the type* . . . *might* have a *potential* impact on maritime commerce." *Id.* (emphasis added). Plaintiff's characterization of the rule is overbroad and is rejected. *See Grubart* at 539 (rejecting both overly broad and overly narrow descriptions of an incident in favor *Sisson's* intermediate level of possible generality). The correct characterization of the rule is simply whether the incident has a *potential* impact on maritime commerce. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 (1982). The United States Supreme Court ("Supreme Court") has rejected overbroad characterizations of maritime incidents, such as the one made by Plaintiff, in favor of characterizations that present more than a "fanciful risk to commercial shipping." *Grubart*, 513 U.S. at 538-39. In *Foremost*, two non-commercial vessels collided in assumed[4] navigable waters; Supreme Court held that federal maritime jurisdiction was appropriate. *Foremost Ins. Co.*, 457 U.S. at 668-70, 669 n.2. In reaching their decision, the Supreme Court examined simply the *potential*[5] effect of the collision of two non-commercial vehicles. *Foremost*, 457 U.S. at 675 (emphasis added). The Supreme Court reasoned that, depending on the location, such a collision could exert a substantial effect upon maritime

---

[4] Supreme Court noted that the District Court "assumed the Amite River is navigable at the site of the collision . . . although seldom . . . used for commercial traffic," but preserved the opportunity to litigate that point in the District Court. *Foremost*, 457 U.S. at 669 n.2.

[5] In evaluating the potential effects of the collision, Supreme Court reasoned that "if the[] boats collided at the mouth of the St. Lawrence Seaway, there would be a substantial effect on maritime commerce, without regard to whether either boat was . . . engaged in commercial activity." *Foremost*, 457 U.S. at 675.

5

commerce. *Id.* The Supreme Court's analysis of the connection test with regard to a yacht fire is instructive:

> The ... test turns ... on a description of the incident at an intermediate level of possible generality. To speak of the incident as "fire" would have been too general to differentiate cases; at the other extreme, to have describe the fire as damaging nothing but pleasure boats and their tie-up facilities would have ignored, ... the capacity of pleasure boats to endanger commercial shipping that happened to be nearby. We reject[] both extremes and instead ask[] whether the incident could be seen within a class of incidents that posed more than a *fanciful risk* to commercial shipping.

*Grubart*, 513 U.S. at 538-39 (emphasis added). Plaintiff seeks to have this Court characterize her slip and fall on a recreational fishing vessel as "certainly" capable of impacting maritime commerce. (Def.'s Mem. in Opp'n 7) (citing *White v. United States*, 53 F.3d 43 (4th Cir. 1995)). This assertion is incorrect.

*White v. United States* concerns a security guard's slip and fall while walking on a gangway from ship to dock. *See White*, 53 F.3d at 45-46. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), in analyzing the connection test, described the general features of the incident as an "injury to a person disembarking from a vessel in navigable water." *Id.* at 47. In doing so, the Fourth Circuit held that "an inability to [safely] avail oneself of the gangway and its appurtenances would greatly inhibit a variety of activities essential to commercial shipping ...." *Id.* Gangways are required for crew to board a vessel and are critical to the loading and unloading of cargo. *Id.* The general features of Plaintiff's incident can be described as an "injury to person while fishing on a vessel in navigable water." Such an incident is easily distinguishable from the incident in *White* and presents no more than a "fanciful risk to commercial shipping." A slip and fall on a non-commercial vessel does not present the same impact on commercial shipping as a slip and fall on a gangway and fails to satisfy the first prong of the connection test.

6

Plaintiff also argues the applicability of *Price v. Price* to the case at bar. (Pl.'s Mem. in Opp'n 8). In *Price*, the plaintiff sued after she was injured disembarking from a non-commercial vessel in navigable water. *Price v. Price*, 929 F.2d 131, 133 (4th Cir. 1991). Plaintiff argues that *Price* is "virtually identical" to the instant case. (Pl.'s Mem. in Opp'n 8). It is not. In *Price*, the plaintiff argues that her injuries resulted from the defendant's errors in navigation. *Id.* at 136. Here, Plaintiff failed to allege that her injuries were caused, either in full or in part, by Defendant's navigational error. (Def.'s Mot. to Dismiss); *see* (Compl. *passim*). This difference is critical because the Fourth Circuit focused its analysis on the defendant's navigational error concluding that the "overriding factor in this case, which brings the case within the courts of admiralty, is the source of liability emanating from the navigation of a vessel . . . ." *Price*, 929 F.2d at 136. Without an allegation of navigational error, *Price* does not apply.

Finally, Plaintiff fails to address Defendant's application of *Gossett v. McMurtry* to the instant case. (Pl.'s Mem. in Opp'n *passim*). In *Gossett*, the United States District Court for the District of South Carolina rejected the plaintiff's overly broad characterization of the general features of the incident in favor of the narrower "horsing around or playing . . . practical jokes amongst boat passengers on a recreational fishing trip." *Gossett v. McMurtry*, 764 F. Supp. 2d 782, 786 (D.S.C. 2010). Similar to the case at bar, the plaintiff commenced an action for maritime negligence against the owner and operator of a non-commercial fishing vessel for an injury[6] sustained while in navigable waters. *Id.* at 783. The court, in dismissing the claim for lack of subject-matter jurisdiction, noted:

---

[6] The details of the alleged injury are as follows:
> Plaintiff fell asleep on the boat, either from exhaustion, from consuming too much alcohol, or a combination of both, and while he slept, [Defendant 1] pulled his own shorts down and placed his buttocks next to Plaintiff's face. Meanwhile, [Defendant 2] took photographs of this incident. Plaintiff alleges that the [d]efendants shared the photographs with each other, and eventually, emailed them to other individuals. Plaintiff also alleges that [d]efendants published one of the photographs to individuals by using it as a

The [p]laintiff has not shown how the general features of this incident affected the navigation of the boat, or how they affected the channels of navigation or the safety for other boats, commercial or non-commercial. While [p]laintiff argues that this incident concerns the safe transportation of passengers, he has not explained how the incident, in any way, posed more than a fanciful risk to commercial shipping . . . ."

*Id.* at 787. Here too, Plaintiff has failed to demonstrate that her alleged slip and fall on a non-commercial vessel in navigable waters posed more than a "fanciful risk to commercial shipping." Because Plaintiff failed to demonstrate the incident posed more than a "fanciful risk to commercial shipping," she has failed to satisfy the first prong of the connection test and has therefore failed to establish federal maritime jurisdiction.

## IV. CONCLUSION

Plaintiff has failed to allege sufficient facts to satisfy the first prong of the connection test, if taken as true, to establish federal maritime subject-matter jurisdiction; therefore Defendant's Rule 12(b)(1) Motion to Dismiss for lack of subject-matter jurisdiction is **GRANTED** without prejudice. Plaintiff is **GRANTED** leave to amend her Compliant within fifteen (15) days of the date of this Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

IT IS SO **ORDERED**.

Norfolk, Virginia
November /4/, 2013

Raymond A. Jackson
United States District Judge

---

screen saver for a computer located at the Ceres Marine office at the Columbus Street Terminal in Charleston, South Carolina.
*Gossett* at 783 (internal quotation marks omitted).